OFNER v. WEIGEL.

(Circuit Court of Appeals, Ninth Circuit.   October 7, 1912.)

No. 2,084.

1. CONTRACTS (§ 56*)—CONSIDERATION—SUFFICIENCY.

Agreement upon a settlement of accounts between the two principal stockholders of a corporation on the retirement of one of them was sufficient consideration to sustain the other's agreement to account for any loss to the retiring stockholder that might be discovered within one year, resulting from the other party's misrepresentation concerning the financial condition of the corporation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 344; Dec. Dig. § 56.*]

2. CORPORATIONS (§ 121*)—RETIREMENT OF STOCKHOLDER—CONTRACT WITH SUCCESSOR.

In an action on a contract whereby defendant agreed to account to plaintiff for any loss resulting to the latter from any misstatement by defendant as to the financial condition of a corporation, stock in which plaintiff sold to defendant, evidence *held* to sustain a finding as to the amount of loss so arising.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. § 121.*]

Appeal from the Circuit Court of the United States for the District of Montana.

Action by Samuel Ofner against Louis Weigel.   From the judgment, plaintiff appeals.   Affirmed.

Samuel R. Stern, of Spokane, Wash., for appellant.
H. S. Hepner, of Helena, Mont., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge.   Formerly the defendant, who is the appellee here, was in equal partnership in the mercantile business in Helena, Mont., with one Auerbach.   Some negotiations were entered upon between Auerbach and defendant, looking to the purchase by Auerbach of defendant's interest.   Before they were completed the plaintiff, Ofner, agreed to and did purchase Auerbach's interest for the sum of $8,000, under an arrangement with defendant that a corporation should be formed and the business thereafter conducted by the corporation.   The corporation was accordingly formed under the name of "The Hub," with a capital stock of 200 shares, at the par value of $100 each share.   Of these shares 100 were issued to plaintiff, 99 to defendant, and 1 to H. S. Hepner, the attorney and brother-in-law of defendant, to enable him to qualify as a director of the company.   This was in the year 1902, and the business was thenceforth conducted in manner as agreed.   Besides the $8,000 which Ofner paid for Auerbach's interest in the business, he loaned to The Hub $4,000 without interest for one year, to be used in the business.   Ofner resided at Chicago, and by arrangement with defendant he was to pay the bills in Chicago for merchandise purchased from time to time, and did so

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pay such bills, discounting them as occasion admitted, and, when without funds from The Hub, borrowed at the bank or advanced his own means. There were consequently two accounts to be kept—one at The Hub's place of business in Helena, Mont., and one at Chicago by the plaintiff. In this way goods were purchased and on the shelves in Montana, and it was not known there when the bills were paid at Chicago until a statement could be had from plaintiff; and, as the testimony shows, statements were not always rendered promptly. The business continued to be conducted in this manner until the latter part of the year 1905 or the first of the year 1906, when a trial balance of the assets and liabilities of The Hub was rendered by Weigel to Ofner, covering the years 1903, 1904, and 1905. The statement shows a net gain for the three years of $11,323.06, and bears the following indorsement:

"As previously explained, on each of the statements, in arriving at the net gain for 1903 and 1904, no account was taken of the then unpaid bills for stock taken in each inventory, as such bills were in the Chicago office, and not reported to Helena. This year such bills were in Helena, and are accounted for hereon, thus producing the apparent loss of $2,277.15 for 1905, but which is actually an item for distribution over the three years involved in the final net gain of $11,323.06."

Weigel went to Chicago with the statement, and Ofner, when he examined it, was much disappointed and not a little exasperated that the business had not earned a much larger profit. Weigel says of this report that it was not a correct statement of the then condition of the business; that it had been padded—that is, made to show a larger profit than had in reality been earned, which was done by taking no account of certain liabilities payable to parties outside of Chicago. He says, further, that Ofner was informed of the condition of the statement, and was agreeable to its being made up in that way with a view to sustaining the credit of The Hub. Ofner denies this statement of Weigel, and declares that he knew nothing about the padding, as it is termed, of The Hub balance. However, at this meeting in Chicago, the parties entered into a tentative agreement, which was reduced to writing, but not signed, whereby Ofner agreed to sell to Weigel his 100 shares of stock in The Hub for the sum of $10,000, to be paid in cash, and to accept in payment for liabilities owing to him from The Hub notes of the corporation, indorsed by Weigel, to the amount of $5,000, and the notes of Weigel and his wife for the balance, these latter to be secured by assignment of certain life insurance policies upon the life of Weigel. The unsigned agreement was dated January 23, 1906, and probably is evidentiary of the time when the parties had come to the understanding. The agreement was never carried into effect in any particular. Weigel claims that he did pay to Ofner on the contract $4,000, but in this we believe him to be in error. He did raise, about that time, through Hackett, Carhart & Co., $4,000; but the money was used in the main to pay other liabilities of The Hub, the balance going to Ofner and being applied on The Hub's liabilities to him. About this time the manner of transacting business by The Hub was changed, by discontinuing the Chicago office

and paying all the bills and accounts from the Helena office. Beginning with the first of the year 1906, Weigel rendered weekly statements of purchases, cash and credit sales, cash balance on hand, and other items of interest, the first bearing date January 6th. Beginning with March 17, 1906, these were supplemented by statements made by Crause, being weekly "account of sales." These statements were continued to be rendered to Ofner up to the very last of the year 1906. Crause was a brother-in-law of Ofner, and was his confidential employé in The Hub.

It is quite apparent from the testimony that the parties were endeavoring in the meanwhile to consummate the transaction whereby Ofner would dispose of his interest in The Hub to Weigel, and other negotiations were had tending to a modification of the original agreement. The negotiations were delayed undoubtedly by Weigel's inability to raise the ready money with which to make the cash payment to Ofner. Late in January, 1907, the parties did consummate an agreement whereby Ofner sold his stock in The Hub to Weigel, and agreed to step out of the business, upon condition that Weigel reimburse him for all the money he had put into the concern individually. Ten thousand dollars was payable at once in money, and the balance in merchandise to be taken from the store of The Hub. The $10,000 was paid at the time of closing the arrangement, and the balance has been subsequently paid in merchandise as agreed. Ofner, being suspicious touching Weigel's representations to him respecting the condition of the business, insisted that Weigel give him a contract to reimburse him for any sum that might be due him on account of errors or misstatements of Weigel. Accordingly the following memoranda of agreement were made and signed by the parties:

"Helena, Montana, Feb. 5, 1907.
"Memorandum of Agreement between Samuel Ofner and Louis Weigel in re Respective Interests in The Hub, a Montana Corporation:

"Mr. Ofner cancels all his right, title, and interest in and to the said corporation. surrenders all shares of stock and collateral, and cancels all claims for moneys advanced by him to the said corporation or procured for it.

"In return he is to receive back all moneys so advanced (including original investment), with interest at the rate of 6 per cent. per annum, to be paid as follows: Ten thousand dollars cash, and balance in merchandise at its actual cost to the corporation; the nature and kind of stock to be selected by said Ofner.                                    [Signed]   Louis Weigel.
                                                  "Samuel Ofner.

"The above is acceptable to The Hub, Corporation.
                              "[Signed]   Louis Weigel, President.
"[Seal.]   Attest:   [Signed]   H. S. Hepner, Secretary."

"Helena, Mont., Feb. 5, 1907.
"This agreement, made and entered into between Samuel Ofner and Louis Weigel, witnesseth:

"That whereas, the said parties hereto have this day effected a settlement whereby the said Samuel Ofner surrenders all of his rights and claims in and to and against the corporation known as The Hub; and whereas, said settlement was based upon certain statements presented to him by the said Louis Weigel, purporting to be statements containing a true and correct statement of all the business of the said corporation, together with the inventory of merchandise on hand, and that the said Samuel Ofner accepted the said statement to be true and correct:

"Now, therefore, it is agreed by and between the parties hereto that in

consideration of the said Samuel Ofner making the said settlement, that should said Samuel Ofner at any time within one year from the date hereof discover or ascertain any errors or misstatements to have been contained in the said statement as aforesaid, and upon which settlement was effected, then, and in that event, the said Weigel agrees to make good and reimburse the said Samuel Ofner with any and all amounts that may be due to said errors or misstatements.

"In witness whereof, the said parties have hereunto set their hands and affixed their seals the day and year herein first above written.

"[Signed] Samuel Ofner [Seal.]
"[Signed] Louis Weigel [Seal.]."

The present suit is based upon the latter agreement, and is for an accounting. The gist of the bill is that, plaintiff having furnished the greater part of the money for carrying on the business of The Hub, it was agreed that Weigel should keep a careful and true account of the business, and that in pursuance of such agreement the defendant did, from time to time, furnish to plaintiff statements of the sales, collections, purchases, and other matters pertaining to the business; that, being dissatisfied with the management and conduct of said business, the plaintiff exacted of defendant, at the time of the consummation of said agreement of sale of the stock of the company to defendant, the contract sued on. As a breach of the contract it is alleged:

"That among the items which were improperly charged by the said defendant, who had absolute control of all such matters, and which said items he has failed and refused to correct, are many showing an apparent payment for merchandise, which amounts, however, were not paid, and which, so far as at present discovered, amount to the sum of $3,916.29; that there are other amounts paid out of said business of said corporation charged to the said corporation, and by reason of which this plaintiff was charged with one-half of the amount thereof, which were personal items for articles used personally by the defendant and his family, and which it was absolutely improper to charge to the expenses of said business, or to charge in whole or in part to this plaintiff as a stockholder thereof; and that there are still other items showing mistakes in addition, subtraction, and in entries in books, which will amount to several hundred dollars, and all of the aforesaid items are contained in the books of account, check books, and other books used by the defendant, and in his custody, and under his control, as part of the books of said corporation, 'The Hub.'"

The defendant denies liability, and alleges want of consideration to support the contract.

Aside from the trial balance and the weekly statements hereinbefore noticed, Weigel rendered to Ofner a trial balance, called "Annual Statement—Dec. 31st, 1902," showing net gain $6,452.01, and another December 31, 1906, showing net loss $17,059.65. The testimony was taken before a master, who rendered findings of fact, among others that the annual statement or trial balance, covering the years 1903, 1904, and 1905, contained errors and misstatements, as follows:

"1. Items purporting to have been paid to various creditors of said corporation, but which were not in fact paid as reported in such statements, to wit:

Goldsmith, Feiss & Co. (three items—$624.35; $411.50; $316.50).. $1,352.35
Levi Strauss & Co......................................... 200.24
W. L. Douglass & Co....................................... 493.80
A. B. Kirschman & Co...................................... 317.65
Hackett, Carhart & Co..................................... 313.64

$2,677.68

"2. Items purporting to have been connected with the business of The Hub, but which were in fact items of personal use, paid, however, out of funds belonging to the said The Hub, to wit:

| | |
|---|---:|
| T. C. Power | $108.50 |
| F. Weigel | 5.00 |
| Holter Hardware Co | 4.91 |
| T. C. Power | 2.40 |
| A. M. Holter | 27.15 |
| Emil Weil | 32.50 |
| Holter Hardware Co | 79.98 |
| S. F. Myers & Co | 83.70 |
| Matt Siller | 40.10 |
| Holter Hardware Co | 20.17 |
| N. Y. Dry Goods Co | 112.80 |
| Mrs. Weigel | 25.00 |
| | $542.21 |

"3. Items entered twice upon the books of the said corporation The Hub, to wit:

| | |
|---|---:|
| Gantner, Mattern Co | $118.81 |
| Coal | 25.00 |
| Freight | 25.00 |
| | $238.81 |

"4. Error in statement of indebtedness of The Hub to Union Bank, to wit.....$500.00

"That the total of all misstatements and errors contained in said statements and shown by the testimony is $3,958.70."

The court rendered a decree on these findings in favor of plaintiff in the sum of $390.51, covering items contained in subdivisions 2 and 3 of the master's findings. From this decree the plaintiff appeals.

[1] The plaintiff claims that, under the contract sued on, he is entitled to recover all sums of money of which he was unjustly deprived while he was a stockholder of The Hub. This is not a suit to annul the agreement whereby Ofner severed his relations with The Hub on account of the fraud of Weigel in rendering false statements touching the business of the concern from time to time, but is simply for an accounting and recovery under the contract of February 5, 1907. The contract itself is vague and indefinite, and it is difficult to say what the parties meant by it. It recites that a settlement had been effected, which settlement was predicated upon certain statements rendered to Ofner by Weigel, "purporting to be statements containing a true and correct statement of all of the business of the said corporation," and then it was agreed that, should Ofner "discover or ascertain any errors or misstatements to have been contained in the said statement as aforesaid, and upon which settlement was effected, then, and in that event, the said Weigel agrees to make good and reimburse the said Samuel Ofner with any and all amounts that may be due to said errors or misstatements."

It is difficult to perceive how Ofner could be affected by such errors and misstatements, in view of the manner in which he disposed of his interest in The Hub. He simply sold to Weigel on

the terms and conditions that Weigel reimburse him for all the money that he put into the business. If there were ever so many errors and misstatements in statements rendered to Ofner, it could not affect the amount of the consideration Ofner was to receive for his interest in the business. The errors and misstatements might afford reason for abrogating the contract of sale; but, if the sale stands, then there would seem to be little reason for recovery under the present contract. The only construction upon which the contract sued on can be upheld is that the statements referred to constituted the inducement for Ofner to sell at the figure agreed upon. If The Hub was entitled to larger profits than such as were represented to Ofner, then he would be entitled to his share of such larger profits. In this view, there was consideration to uphold the contract; the consideration being the settlement agreed upon.

[2] Much controversy and a good deal of speculation is indulged in with respect to what statement or statements the contract contemplates as forming the basis of the settlement. Appellee insists that reference was made to the one statement covering the years 1903, 1904, and 1905, while appellant claims that the agreement had in purview, not only this statement, but the statement for the year 1906, as well as the weekly reports made during the year 1906 by appellee and Crause to appellant, and the trial balance for the year 1902. There is some dispute as to whether Ofner had received the statement for 1906 when the final agreement was entered into for the disposal of his interest in The Hub. But, in the view we take of the controversy, it can make no material difference under the testimony whether it be one or all of these statements and reports that is within the contemplation of the agreement.

It will be noted that plaintiff has not endeavored, through expert testimony or otherwise, to obtain an accurate and reliable statement of the condition of the business of The Hub up to and at the time he disposed of his interest therein finally, with which to compare the statements and reports rendered by Weigel, and thereby to determine what errors and misstatements appear by such statements and reports; but the statements and reports are compared with themselves to ascertain discrepancies, and it is sought thereby to charge Weigel with such discrepancies. Such discrepancies, however, could do no injury to plaintiff, unless they deprived him of some right or property to which he was entitled.

Now, as to the items comprised by subdivision 1 of the master's findings, aggregating $2,677.68, it satisfactorily appears that they embrace amounts for which certain checks were drawn against The Hub; but the checks were never used. They were destroyed, and checks of later dates, and perhaps different denominations, were drawn covering the previous amounts. These discrepancies were discovered by comparison of the weekly reports with the stubs of the check book. Now, since it appears that the checks reported as drawn and paid were in fact not paid, but destroyed,

the funds of The Hub were not reduced or depleted by the mere incident of drawing the checks, and consequently Ofner was not injured by the apparent misstatement. We quite agree with the trial court in its disposition of the question pertaining to those items. So of the item comprised by the fourth subdivision of the master's report. This item was mistakenly entered as payment on merchandise account, when it should have been entered as payment on an obligation due Union Bank. The money was in reality paid to the bank, and the error in posting could affect neither The Hub nor the plaintiff injuriously.

As to the items comprised by subdivisions 2 and 3 of the master's report, these are such as it may be said that Weigel profited by to the detriment of Ofner, but not to the full amount of such items. It may be assumed that Ofner was the owner of a one-half interest in The Hub by reason of his ownership of one-half of the capital stock. He could have no interest beyond that proportion. This would entitle him to be reimbursed in amount equal to one-half of these items, and the decree of the trial court respecting them was proper.

The plaintiff's entire claim for relief comprises these items:

Items of bills claimed to have been paid, but not paid.......... $ 2,677 68
Items purported to have been connected with the business of The
  Hub, but in fact paid for personal use..................... 542 21
Items entered twice on the books............................. 238 81
Error in statement of indebtedness to the Union Bank.......... 500 00
Net gain at close of the year 1902............................ 6,452 01
Net gain for the years 1903 and 1904......................... 13,621 00
Net gain for the year 1905................................... 11,871 95
Net gain for the year 1906.................................. 11,199 11

                                              $47,102 77
One-half of which is........................................ $23,551 39

We have disposed of the first four items of the claim. The fifth is the amount shown as net gain by the trial balance or annual statement for 1902. In what way it is claimed that this is an error or misstatement does not appear. As has been previously indicated, no final, accurate, and reliable statement of the assets of The Hub was ever made, in comparison with which it was possible to determine the errors of previous statements, and the comparison is simply of one statement with another. Applying the test adopted, no error or misstatement has been shown relative to the net gain for the year's business for 1902.

The sixth item is the aggregate net gain for the years 1903 and 1904. The seventh does not appear from any report or statement rendered. It is near the amount, however, of the net gain given in the statement for the years 1903, 1904, and 1905. A net loss was reported in this statement for the year 1905 of $2,277.15. This amount, deducted from the aggregate gain for the three years, gives as a net gain $11,323.06. No figures or other statement, or evidentiary facts otherwise, are shown to support the sixth and seventh items as claimed. Nor does it appear, from any method of deduction, that the statement of net gain for the years 1903, 1904,

and 1905 is an error or misstatement in any degree, except as the items reported by the master to have been for the personal use of Weigel, and erroneously entered, and the items twice entered on the books, may have affected the final net results.

As it relates to the eighth item of plaintiff's claim, it does not appear wherein the item arises out of any error or misstatement of Weigel. The 1906 trial balance shows a net loss of $17,059.65 for the year. No figures have been deduced showing that that is an error or misstatement in any way, while, on the other hand, Weigel has fairly well explained the cause of the apparent heavy falling off in profits for that year. A very large item consists in reports of interest charges by Ofner that had been previously withheld by him. Without going into the subject in detail, it is sufficient to say that it has in no way been shown that the net loss reported by the trial balance of 1906 is an error or misstatement to the injury of plaintiff.

The decree appealed from will be affirmed, with costs to the respondent.